THOMAS, J.
 

 We have before us the trial court’s order purporting to invalidate the Leon County Commission’s development order approving Appellant’s Planned Unit Development (“PUD”) concept plan known as Summer-field. We reverse and remand with directions that summary judgment be entered in Appellants’ favor.
 

 We hold as a matter of law that the Special Development Zones defined in the Tallahassee/Leon County Comprehensive Plan (“Plan”) do not apply within the Sum-merfield land areas known as “closed basins.” Under the Plan, these areas are not subject to the more stringent provisions meant to control development in order to prevent discharge into Lake Jackson. The County’s ordinance was not unlawfully inconsistent with its Plan. Although the trial court commendably scrutinized the Plan’s text, the order incorrectly interpreted the text as a whole in relation to the governmental action.
 

 The Comprehensive Plan and Land Development Code
 

 The Plan established density and land use regulations within the Urban Service Area to promote the effective use of infrastructure and discourage urban sprawl by authorizing more development under certain conditions, where appropriate. The Plan’s Conservation Element created Special Development Zones within certain lands surrounding Lake Jackson; these areas were defined by elevation. Under Policy 2.2.12 of the Conservation Element, “Special Development zones with accompanying criteria shall be established and implemented through the [land development regulations] for ... Lake Jackson.” These Special Development Zones imposed development limitations on areas below certain elevations. Under Policy 2.3.1 of the Conservation Element, “Local government shall designate special development zones for Lake Jackson that restrict activities
 
 that impact the quality of stormwa-ter.”
 
 (Hereinafter “rainwater runoff.”) (Emphasis added.)
 

 In the Plan’s Land Use Element, a special category called “Lake Protection” required development density limitations in certain areas which are relevant here. The Land Use Element provided that residential development clusters could be allowed on “portions of parcels not located within the Lake Jackson Special Development Zone and lying below [defined elevations] .... Future development will not be subject to the limitations of the Lake Protection category if ... competent scientific evidence [shows] that the development
 
 is located in a closed basin that does not ... discharge [rainwater runoff] to the larger Lake Jackson Basin.”
 
 (Emphasis added.) Policy 1.1.8 of the Land Use Element provided that “compliance with the Conservation Element shall be met prior to consideration of requirements in the Land Use Element.”
 

 Leon County adopted a land development regulation, section 10-192(b)(3) of the Land Development Code. That sec
 
 *504
 
 tion provided that closed basins within the Lake Jackson Basin lake protection area were not subject to Special Development Zone restrictions, if competent scientific evidence showed that the relevant land area did not discharge water into the lake, post-development runoff would be retained on-site or discharged into an approved runoff facility, and all other development standards within the Plan were met regarding land located below certain elevations.
 

 Facts
 

 Summerfield consists of about 107 acres located in the Urban Service Area southwest of Lake Jackson. It is separated from Lake Jackson by Highway 27, a four-lane divided road. Little Lake Jackson, an arm of Lake Jackson, is northwest of the property. The property is situated within a series of natural basins or depressions. It is undisputed that much of the property is located within “closed basins.” In a closed basin, the only outlet for rainwater is percolation, evaporation or transpiration; thus, these land areas cannot send water runoff into Lake Jackson.
 

 Appellants applied for a conceptual site and development approval for the Sum-merfield PUD. The PUD process is a two-step function in which the local government approves a PUD concept plan. Approval of the PUD concept plan does not grant any right to develop the property; the owner must submit and receive approval of a final PUD concept plan before actually developing the land.
 

 In 2004, Leon County adopted Ordinance 04-40, which rezoned the 107-acre parcel to mixed use and significantly increased permissible development in the closed basin areas. The County’s approval of the PUD imposed numerous conditions, including a requirement that any future application for final development approval must comply with all applicable requirements of the Land Development Code. We note that state law defines a “development order” as “any order granting, denying, or granting with conditions an application for a development permit.” § 163.3164(7), Fla. Stat. Development orders must be consistent with the local government’s comprehensive plan. § 163.3194(3)(a), Fla. Stat.
 

 Appellees filed a complaint against the County under section 163.3215, Florida Statutes, seeking to invalidate the development order on the basis of inconsistency with the Plan. Notably, Appellees also sought certiorari review in the trial court regarding the County’s approval of the conceptual PUD; a different trial court denied relief, finding that under the County’s Land Development Code, the Special Development Zones did not apply to closed basins. This court subsequently denied certiorari in a second-tier certiorari proceeding.
 
 See Phipps v. Leon County,
 
 935 So.2d 504 (Fla. 1st DCA 2006).
 

 In 2005, Appellees moved for summary judgment. Appellants filed a cross-motion for summary judgment, arguing that the Special Development Zones did not apply to closed basins on their property, because the basins could not discharge rainwater runoff to Lake Jackson. Thus, Appellants asserted that under Policy 2.3.1 of the Plan, Special Development Zones only applied to “restrict activities that impact the quality of stormwater.” Appellants supported their motion with an affidavit from an engineer stating that the majority of their property was in a closed basin. Significantly, Appellants also submitted an affidavit from the Leon County Director of Environmental Compliance Division of Growth and Environmental Management stating that only the area designated “Basin 1” was
 
 not
 
 a closed basin.
 

 In its order on summary judgment, the trial court found that the Special Develop
 
 *505
 
 ment Zones applied to closed basins, but acknowledged that Appellants’ arguments were persuasive. It went on to find that it was undisputed that Appellants’ property contained elevations that triggered the Special Development Zones, and that the Plan did not contain an exception for closed basins, despite such language in the Land Development Code and the Land Use Element. The trial court was not persuaded by the argument that the Special Development Zones were established to “restrict activities that impact the quality of stormwater” under Policy 2.3.1, which would limit such Zones to open basins. Instead, the trial court found that because the plain language of Policy 2.2.12 which defined and established Special Development Zones did not contain any exception for closed basins in the Lake Jackson area, the development order allowing increased development in those areas in contravention of the Zones was purportedly invalid. We respectfully disagree with the trial court’s careful analysis, and find the better interpretation of the Plan as a whole, and the local government’s interpretation of the Plan, compels us to uphold the development order and the ordinance.
 

 Standard of Review and Analysis
 

 We have recently recognized that our standard of review of the consistency of a development order with a comprehensive plan is
 
 de novo. Bay County v. Harrison,
 
 13 So.3d 115, 118 (Fla. 1st DCA 2009). We have further held that a development order is considered consistent with a comprehensive plan where the “ ‘land uses ... and other aspects of ... [the] order ... are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan....”
 
 Id.
 
 (quoting § 163.3194(3)(a), Fla. Stat. (2005)). The Florida Legislature has established that in reviewing consistency, a court may consider the “reasonableness of the comprehensive plan, or element or elements thereof, relating to the issue justici-ably raised or the appropriateness and completeness of the comprehensive plan, or element or elements thereof, in relation to the governmental action or development regulation under consideration.” § 163.3194(4)(a), Fla. Stat.
 

 Here, the trial court’s order incorrectly reviewed the development order and the Plan by neglecting to consider the “reasonableness of the comprehensive plan, or element or elements thereof.” By reviewing the applicable provisions of the Plan as a whole, the most reasonable and holistic interpretation, based on both the text and the synthesis of the document, we have no doubt that the development order is consistent with the Plan. This is necessarily so, because when read
 
 in pari materia,
 
 it is clear that the Plan and its elements provide that within certain Zones that actually discharge rainwater runoff into Lake Jackson, Leon County has established much more stringent development limitations for one primary purpose: to protect Lake Jackson from polluted rainwater runoff.
 

 Appellees make an interesting argument in this regard. They assert that Appellants’ argument would produce an absurd result because only Lake Jackson’s watershed is affected by the provisions of policy 2.3.1. Thus, Appellees argue that under Appellants’ view, the Special Development Zones would apply in closed basins around all other lakes
 
 except
 
 Lake Jackson. Ap-pellees’ argument might have merit if they were challenging the application of the Special Development Zones in those closed basins, but that argument is not presented here. Whether it is absurd to provide greater protections to water bodies other than Lake Jackson is not an issue raised here, and as we have recently held, we are extremely reluctant to apply the absurdity
 
 *506
 
 doctrine.
 
 See Nassau County v. Willis,
 
 41 So.3d 270, 279 (Fla. 1st DCA 2010) (“Courts should exercise great caution before deviating from the plain text ... to purportedly avoid reaching what a court considers an ‘absurd result.’ ”). What is certainly not absurd, however, is to recognize that Leon County has determined that rainwater runoff policies and regulations should not apply where there is no discharge of runoff.
 

 We find that under any proper interpretation of the Plan, the Special Development Zones do not apply to closed basins within Summerfíeld. Furthermore, we note that the Special Development Zones applied different elevations to other water bodies, and apparently do not apply at all to water bodies not listed, so we decline to speculate regarding how Appellees’ argument would apply in such cases where a landowner asserted that a closed basin was entitled to an exemption from the Special Development Zones. We agree with Appellants that under Conservation Element Policy 2.3.1 and the similar provisions in the Land Use Element regarding the Lake Protection category, as well as the regulations promulgated in the Land Development Code, it is clear that the Special Development Zones were drafted to protect Lake Jackson and other receiving water bodies from polluted rainwater runoff. To accomplish this, the Plan established polices that prohibit disturbance of vegetation and natural features within certain elevation Zones near those water bodies. The Plan expressed a repeated provision that these Zones were created to ensure cleaner runoff from development. If land cannot discharge runoff into Lake Jackson, landowners are provided some relief, based on the appropriate conclusion that the more stringent Zones were designed to protect water bodies, and not to impose general environmental controls unrelated to water quality.
 

 REVERSED and REMANDED with directions to enter judgment in favor of Appellants.
 

 HAWKES and MARSTILLER, JJ., concur.