IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

HAINES O'NEIL, individually
and O'NEIL
TRANSPORTATION
SERVICES, INC.,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

     Appellant,

CASE NO. 1D13-4545

v.

WALTON COUNTY, A
POLITICAL SUBDIVISION OF
THE STATE OF FLORIDA,
EBSCO GULF COAST
DEVELOPMENT, INC., A
FLORIDA FOR-PROFIT
CORPORATION, and A.E.
FOSTER, JR., INDIVIDUALLY,

     Appellee.
_____/

Opinion filed September 16, 2014.

An appeal from the Circuit Court for Walton County.
Kelvin C. Wells, Judge.

Stephen A. Ecenia and Marsha E. Rule of Rutledge, Ecenia & Purnell, and Thomas
G. Tomasello, Tallahassee for Appellant.

W. Douglas Hall and Christine Davis Graves of Carlton Fields, P.A., Tallahassee,
and Mark D. Davis of Andrews & Davis, Defuniak Springs, and Gary A. Vorbeck
of Theriaque Vorbeck & Spain, Destin for Appellee.

OSTERHAUS, J.

Appellants have challenged an order approving a 20-unit planned unit development (PUD) immediately seaward of their beach-view property at Inlet Beach in Walton County. Citing § 163.3215, Florida Statutes (2013), they assert that the order conflicts with Walton County's comprehensive plan (Comp Plan) by approving new lots seaward of the coastal construction control line (CCCL); approving other construction (dwellings, roads, grading, drainage, etc.) on the primary dune within the Coastal Protection Zone (CPZ); and mis-locating the CPZ. Appellees moved for summary judgment, which the circuit court granted.

We now affirm because the 2013 order being challenged here did not materially alter the development, CCCL, or CPZ. Rather, an earlier development order from 2010, had already approved the developer's first-step PUD application, including its site plan and the location of development relative to the CCCL and CPZ. The Board of County Commissioners ("County") further found this earlier application "in compliance and consistent with" the Comp Plan. And nobody challenged it. See § 163.3215(3), Fla. Stat. (requiring consistency challenges to be filed "no later than 30 days following rendition"). Instead, Appellants filed this action after the County approved the follow-up, detailed plan in 2013. But because § 163.3215 is predicated upon showing a material alteration of property inconsistent with a Comp Plan, and here the County's 2010 order had already

2

approved the placement and relative location of the things that Appellants challenge, this challenge to the 2013 order fails to meet the requirements of § 163.3215.

**I.**

A.  The Two Development Orders

In 2009, Appellees EBSCO Gulf Coast Development, Inc., and A.E. Foster, Jr., (collectively, "Developer") set out to develop a 20-unit coastal residential community on Inlet Beach in Walton County. Walton County's Land Development Code sets forth a two-step approval process for PUD projects: a concept plan phase and a detailed plan phase. Walton Cnty. Land Dev. Code § 2.06.02 (hereinafter "LDC").

At the first step, the County specifically reviews a concept plan "for compliance with the goals, objectives and policies of the comprehensive plan and compatibility with the character of the surrounding area." Id. A report is then made publically available at least one week in advance of a public hearing held by the Planning Commission. After the hearing, the Board of County Commissioners holds another public hearing in order to approve or deny the concept plan, or to approve it with conditions. Id. At the second step, "an applicant has the option to submit a Detailed PUD Plan for all or part of the development approved in the conceptual plan approval." LDC § 2.06.02(B). If technical requirements are met,

3

the Board issues another final order memorializing its approval of the detailed plan. LDC §§ 2.06.02(B), 10.02.01, 10.02.03.

In this case, Developer submitted a "Concept Plan" with maps showing all twenty new parcels on the site plan, proposed dwellings, roads, driveways, landscape buffers, the CCCL, and the CPZ. After the requisite notice and a hearing, the Board of County Commissioners approved the Concept Plan, finding it to be "in compliance and consistent with both the [Comp Plan] and the LDC." The County's approval came with certain conditions, including requiring Developer to construct a turnaround and parking spaces, pay for construction of a public boardwalk, and re-pave a road after completing the dune enhancement project called for by the Concept Plan.[1] The County recorded the final order approving the Concept Plan on March 16, 2010.

In 2012, Developer followed-up by submitting a "Detailed Plan" that was also approved by the County. The 2013 Order approving the Detailed Plan noted that it had "previously approved . . . and rendered a Final Order for the Lupin Beach Conceptual PUD Plan on March 16, 2010, which is hereby incorporated by reference." Nothing in the Detailed Plan or 2013 Order indicated that the location of development relative to the CCCL, CPZ, or primary dune had been materially

---

[1] The affidavit of Appellee Mr. Foster, Vice President of Appellee EBSCO Gulf Coast Development, Inc., stated that after the 2010 Order was entered EBSCO spent about $200,000 to fund construction of the boardwalk and about $500,000 to construct the dune enhancement project, as contemplated by the order.

4

altered. Rather, each remained in the same place in relation to the other, as had been approved by the 2010 Order—lots remained seaward of the CCCL and the CPZ's upland boundary line (as marked by the primary dune) remained seaward of the proposed construction of dwellings, roads, driveways, and other infrastructure.

B.  The Litigation

After the Detailed Plan was approved in 2013, Appellants challenged the PUD under § 163.3215.[2] The Complaint alleged that the 2013 Order conflicted with three of the Comp Plan's environmental protection provisions:

> [1.]  Defendants propose to **destroy significant primary dunes** through grading, the construction of 20 dwelling units, the construction of access roads and utility corridors in the primary dunes, and the construction of a 610 foot long retaining wall and extensive associated excavation, grading, and associated infrastructure within the Lupin Beach PUD. The existing dune contours will be extensively altered and will be reduced by as much as 16 feet.  *        *        *
>
> [2.]  The Project violates the [Comp] Plan and LDC because a portion of the **proposed development is located within the coastal protection zone**, whereas specific provisions of the Comp Plan and LDC] prohibit construction of dwellings within the [CPZ]. . . .  The CPZ, if properly located, would allow only very limited development on the lots proposed to be created . . . and [preclude] the proposed

---

[2]  Section 163.3215(3) specifically provides:

> Any aggrieved or adversely affected party may maintain a de novo action . . . against any local government to challenge any decision [granting] an application for . . . a development order, as defined in s. 163.3164, which materially alters the use or density or intensity of use on a particular piece of property which is not consistent with the comprehensive plan.

5

development in that area contrary to what is permitted by the Development Order.   *   *   *

[3.]   According to the approved site plan, . . . ***new parcels [will] be created entirely seaward of the CCCL*** on which dwellings are proposed. . . . The [lots] are being created in violation of the [Comp Plan's] prohibition against creating new parcels entirely seaward of the CCCL.[3]

(Emphasis added).

Developer moved for summary judgment.[4] It argued that Appellants could not attack matters addressed by the 2010 Order by challenging the 2013 Order. In Developer's view, the 2013 Order approving the Detailed Plan merely implemented development rights that had already been granted. After a hearing, the trial court entered summary judgment for Appellees, concluding that the 2013 Order did not materially alter the property as required to bring a § 163.3215-based challenge. Appellant then filed a timely appeal.

## II.

A trial court may grant a motion for summary judgment only if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. See Fla. R. Civ. P. 1.510(c). "Once the moving party establishes that there are no genuine issues of material fact, the burden shifts to the nonmoving party to show the existence of a disputed issue of fact." Master Tech Satellite, Inc.

---

[3] A fourth allegation stated in the Complaint that is not at issue in this appeal involved the PUD's alleged non-compliance with FEMA floodplain limits.

[4] Appellee Walton County adopted Developer's motion.

v. Mastec N. Am., Inc., 49 So. 3d 789, 790 (Fla. 3d DCA 2010). The trial court must view the evidence and draw all inferences in favor of the opposing party. Castle Key Ins. Co. v. Raymond H. Duke Enterprises, Inc., 135 So. 3d 578, 579 (Fla. 1st DCA 2014). But a party cannot create disputed issues of fact "by merely stating factual conclusions." Master Tech Satellite, Inc., 49 So. 3d at 790.

**A.**

Appellants claim that the 2013 Order materially altered the Lupin Beach property inconsistent with Comp Plan in three ways: (1) locating lots seaward of the CCCL; (2) allowing development on the primary dune; and (3) incorrectly locating the CPZ and allowing development therein. See Compl. ¶ 24. But the *2013 Order* didn't materially alter the property in these ways; and, if any order did, it was the *2010 Order*.

> 1. The 2013 Order didn't "alter" the property by locating parcels seaward of the CCCL.

Appellants argue first that the 2013 Order altered the property by approving new lots seaward of the CCCL contrary to the Comp Plan. See Comp Plan Policy C-1.6.2.[5] But maps submitted with Developer's Concept Plan approved in 2010 designated all twenty parcels upon which new dwellings were planned, including those alleged by Appellants to be located entirely seaward of the CCCL. Because

---

[5] Policy C-1.6.2 provides: "The County shall issue no development order or permit for construction on a new parcel . . . if such new parcel lies entirely seaward of the Coastal Construction Control Line."

these parcels were sited in the same location relative to the CCCL as addressed in Developer's County-approved and recorded 2010 application, the 2013 Order cannot be considered to have "altered" the property per § 163.3215(3). Walton County's Land Development Code provides that consistency challenges may be asserted as to matters "not specifically addressed" by a concept plan. See LDC § 2.06.02(A). And here the Concept Plan specifically addressed the location of development relative to the CCCL.

Moreover, at this point, it is well beyond the 30-day statutory deadline for challenging the 2010 Order, a jurisdictional impediment for the court to consider changes wrought by the 2010 Order. § 163.3215(3), Fla. Stat.; see also Presidents' Council of SD, Inc. v. Walton County, 36 So. 3d 764, 765 (Fla. 1st DCA 2010). We therefore affirm the summary judgment order entered by the circuit court on the CCCL-related issue.

2.   The 2013 Order didn't "alter" the property by authorizing residential construction on the primary dune in the CPZ.

For the same basic reason, the court appropriately entered summary judgment on Appellants' claims related to the destruction of the primary dune and the location of the CPZ.

As a preliminary matter, Appellants are correct that Walton County's Comp Plan severely limits almost all development on the primary dune within a CPZ. It permits only "boardwalks, shoreline access structures, and erosion control

8

measures that will enhance and protect the dune system" to be built in this area. Comp Plan Policy C-1.6.1(2). But, as with the issue above, the 2010 Order—not the 2013 Order—specifically addressed the location of the primary dune and CPZ relative to the residential development. If the PUD materially altered the primary dune and CPZ on the property for purposes of § 163.3215, then the alteration occurred with the 2010 Order.

The Complaint's assumption about where the primary dune and CPZ were located circa 2013 is wrong. Appellants asserted that the primary dune (and hence the CPZ[6]) was located "immediately to the south of Plaintiff's residence," at a place where construction was to occur on two lots identified by the PUD application. But the CPZ was mapped in a different place in Developer's Concept Plan application that the County approved and recorded in 2010. In fact, Developer's Concept Plan included maps showing all twenty proposed residential units with corresponding roadways and driveways, the beach, the dune, a proposed landscape buffer, the properties of upland owners (including Appellants' property), the site's topography, the CCCL, the CPZ, and the contours of a plan-proposed dune enhancement project vis-a-vis the existing grade. The "CPZ Map" included in

---

[6] The CPZ is defined by reference to the primary dune. See Comp Plan Policy C-1.6.1 (defining the CPZ as "extend[ing] seaward of the landward toe of the primary dune ridge or, where the toe cannot be determined, 50 feet landward of the crest of the primary dune or 25 feet landward of the top of the higher bluff regions where no primary dune exists." Here, the parties do not argue that no primary dune exists.

9

the Concept Plan application specifically marked the "Coastal Protection Zoneline" as being seaward of where Appellants allege and seaward of the construction that Appellants allege to be on the primary dune.[7] And in the Detailed Plan, the CPZ and primary dune remained seaward of the upland construction.

In sum, Appellants cannot prevail with arguments that the 2013 Order materially altered the property by allowing development within the CPZ, or on the primary dune, because the Concept Plan in 2010 had already established the relative location of the CPZ (and primary dune) elsewhere, in a place separate from the upland development. As discussed earlier, to the extent that Appellants dispute the 2010 placement of these things, they are too late. See § 163.3215(3), Fla. Stat.; LDC § 2.06.02(A) (only matters "not specifically addressed" in a concept plan are subject to Comp Plan consistency challenges).[8]

3. No genuine issue of material fact remains.

Appellants submitted two affidavits from individuals familiar with coastal projects in response to the motion for summary judgment. But neither creates

---

[7] Appellants argue that the CPZ Map only shows an upland "Coastal Protection *Zoneline*," but not a "Zone" and thus actually failed to identify the CPZ. But this argument is silly. Once the upland CPZ boundary is established on a map, the zone's location is obvious; by definition, it extends seaward to the water.

[8] Appellants' other CPZ-related allegations related to the destruction of the primary dune—regarding removal of vegetation, stormwater management, grading, drainage, and the construction of a retaining wall—also fail because they hinge on Appellants' incorrect assumption that the CPZ lies farther inland of where it was approved in 2010.

genuine fact issues as to Appellants' three claims. The affidavits identify many details of the project not contained in the Concept Plan approved in 2010, such as the materials and building processes to be used in completing the construction of the dwellings, roads, driveways, and other adjacent infrastructure, and where precise boundaries within the development would fall. But these details don't bear on the particular issues framed by Appellants' Complaint that more narrowly involve the location of development relative to the CCCL and CPZ/primary dune. Again, Appellants' Complaint "[s]pecifically . . . contend[ed] that the Project violates [Comp Plan] provisions related to protection of the primary dune . . ., the location of individual lots in relation of the CCCL, and the method by which the location of the CPZ was determined." Compl. ¶ 24. These three allegations relate to the location of the CCCL and CPZ vis-à-vis the residential construction, but not to the many details of upland construction that may (or may not) have altered the property's use or intensity of use in other ways.[9] In sum, the affidavits don't raise questions of material fact related to the discrete issues raised by Appellants' Complaint, even if they might support a different set of consistency claims.

---

[9] For example, Appellants cite the construction of a retaining wall upland of the proposed dwellings, which was not addressed in the Concept Plan, as having raised a legitimate use, density, or intensity of use claim under the statute. But this is a different issue than alleged in the Complaint, which framed this litigation in terms of the impact of residential construction on the CCCL, CPZ, and primary dune.

**B.**

Finally, we reject Appellants' contention that the 2013 Order presented the first opportunity to challenge the County's approvals because the 2010 Order wasn't a "development order." Section 163.3215(3) only authorizes challenges to local decisions involving applications for "a development order, as defined in § 163.3164." Under § 163.3164(15), "development order" refers to "any order granting, denying, or granting with conditions an application for a *development permit*." (Emphasis added). The term has been broadly construed. See Graves v. City of Pompano Beach ex rel. City Com'n, 74 So. 3d 595 (Fla. 4th DCA 2011); Arbor Properties, Inc. v. Lake Jackson Prot. Alliance, Inc., 51 So. 3d 502 (Fla. 1st DCA 2010). The definition of "development permit" includes "any other official action of local government having the effect of permitting the *development* of land." § 163.3164(16), Fla. Stat. (emphasis added). As recognized by the Fourth District in Graves, 74 So. 3d at 598, "development" is broadly construed and includes "any building activity" (§§ 163.3164(14), 380.04(1)), or "change in the intensity of use of land, such as an increase in the number of dwelling units in a structure or on land or a material increase in the number of businesses, manufacturing establishments, offices, or dwelling units in a structure or on land." § 380.04(2)(b).

It follows here that the 2010 Order was a challengeable "development order," because it approved and recorded the Developer's plan to subdivide the property into many new parcels and build new dwellings, roads, driveways, and other infrastructure. That the 2010 Order included conditions,[10] or that Developer submitted follow-up detailed construction plans, did not alter the 2010 Order's quality as a "development order." See, e.g., Arbor Properties, Inc., 51 So. 3d at 503 (treating an order approving a concept plan with conditions as a development order). Rather, *both* the 2010 and 2013 Orders were susceptible to *de novo* challenge under § 163.3215. But Appellants' challenge to the 2013 Order could only be successful insofar as it identified material alterations to the property not already addressed by the Concept Plan approved in 2010. See LDC § 2.06.02(A) (only matters "not specifically addressed" in a concept plan remain subject to Comp Plan consistency challenges).

## III.

For the foregoing reasons, we AFFIRM.

VAN NORTWICK, J., CONCURS; BENTON, J., DISSENTS WITH OPINION.

---

[10] The LDC provides that, when approving the concept plan, "[t]he Board shall have the discretion to place conditions that insure compatibility of the project with surrounding areas, insure compliance with the comprehensive plan or enhance the public health, safety and welfare." LDC § 2.06.02(A).

BENTON, J., dissenting.

In its natural state, the parcel in question could not have been developed as now proposed, in keeping with Walton County's comprehensive plan (Comp Plan). This is because, as the scholarly majority opinion explains, the Comp Plan allows no beach houses—only "boardwalks, shoreline access structures, and erosion control measures that will enhance and protect the dune system"—in the "coastal protection zone." Comp Plan Policy C-1.6.1(2). The 2013 development order at issue here authorizes construction of at least two houses in what all parties seem to agree was the coastal protection zone before the 2010 PUD order was entered.

Insofar as pertinent here, the Comp Plan defines the coastal protection zone as the area between the Gulf of Mexico and "the landward toe of the primary dune ridge . . . ." Comp Plan Policy C-1.6.1. At the time the 2010 PUD order was entered, the primary dune ridge lay landward of sites on which the 2013 order allows construction of at least two houses. With the intention of removing the legal impediment the primary dune ridge—and therefore the coastal protection zone it defined—posed, the developer proposed in 2010 to bring in bulldozers to move the primary dune closer to the Gulf, seaward of the construction it plans.

The 2010 order which approved this approach was not appealed, and it may be, as the majority opinion assumes, that it would be inequitable not to allow the relocation of the coastal protection zone at this point. I express no view on the

14

issue except to suggest that the answer might very well turn on factual questions which should not be resolved on summary judgment. The developer did not show otherwise. I reject any suggestion that the Developer's Concept Plan submitted in connection with the 2010 application automatically establishes the status quo today. For these reasons, I would reverse the summary judgment entered below, and remand for further proceedings.